IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-01300-ZLW-CBS

SUE ANNE MICHAELS,

    Plaintiff,

v.

AKAL SECURITY, INC., and
ERIC HOLDER, Attorney General, United States Department of Justice,

    Defendants.
_____

ORDER
_____

The matter before the Court is Defendant Attorney General's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. No. 51). The Court has determined that the motion can be resolved on the parties' briefing and that no oral argument is necessary.

## I.    BACKGROUND

Plaintiff is employed by Defendant Akal Security, Inc. (Akal) as a Court Security Officer (CSO) at the Alfred A. Arraj Federal Courthouse (Arraj Courthouse) in Denver,

Colorado.[1]  Akal has a contract with the United States Marshal Service (USMS)[2] to provide CSO services at the Arraj Courthouse.[3]

Plaintiff alleges as follows.  Born male, Plaintiff began transitioning to the female sex on or before February 2007 by beginning hormone treatments.[4]  During an annual medical examination in September 2007, she disclosed to Akal that she had been diagnosed with gender dysphoria.[5]  On October 8, 2007, Akal and the USMS ordered her to undergo an additional medical examination to determine if she was physically capable of performing CSO job duties.[6]  Plaintiff claims that on at least three other occasions, Akal and the USMS requested that she provide additional medical information to the USMS reviewing physician.[7]

On October 22, 2007, Plaintiff began presenting herself as a female at work and requested that her co-workers address her by her new female name.[8]  On November 14, 2007, Plaintiff's supervisor told Plaintiff that staff from the Clerk of Court's office had complained about her use of restrooms designated for females, and that the staff

---

[1] Pl.'s Second Am. Compl. (2nd Am. Compl.) (Doc. No. 49; Nov. 10, 2009) at 4 ¶ 20.

[2] Defendant Eric Holder, as Attorney General of the United States (Attorney General), heads the USMS. Id. at 4 ¶ 18.

[3] Id. at 3 ¶ 16.

[4] Id. at 6 ¶¶ 39-40.

[5] Id. at 6 ¶ 41.

[6] Id. at 7 ¶ 49.

[7] Id. at 9-10 ¶¶ 74, 77.

[8] Id. at 9 ¶¶ 67, 71.

threatened to call Federal Protective Services based upon her use of the female restrooms.[9] The next day Plaintiff sent a written statement to her Akal supervisor, the United States Marshal, and the Clerk of Court asserting that her work environment was tense and requesting that Akal offer Question and Answer sessions regarding her transgender status.[10]

On November 27, 2007, Akal informed Plaintiff that an investigation had been initiated because of her continued use of restrooms designated for women.[11] The following day, Plaintiff's Akal supervisor directed her in writing to use restrooms compatible to her anatomical gender while on company payroll, until such time she provided tangible evidence proving she had undergone her sex change.[12]

On January 4, 2008, Plaintiff was placed on involuntary leave without pay pending further investigation.[13] She returned to work on April 14, 2008.[14] On April 18, 2008, Akal provided to Plaintiff a copy of a written disciplinary action which stated that Akal had found that Plaintiff had used a personal cell phone while on duty in the control

---

[9] Id. at 10-11 ¶¶ 83-84.

[10] Id. at 11 ¶ 87.

[11] Id. at 11 ¶ 88.

[12] Id. at 12 ¶ 92.

[13] Id. at 12 ¶ 99.

[14] Id. at 14 ¶ 111.

room and had downloaded unapproved software on USMS computers in the control room, both of which violated Akal's CSO Performance Standards.[15]

As of the time the Second Amended Complaint was filed, Plaintiff continues to be employed as a CSO at the Arraj Courthouse.[16]

## II. CLAIMS

Seven claims are brought against the Attorney General for the alleged actions of the USMS.[17] Claims Four and Five allege supervisory harassment and hostile work environment based on Plaintiff's gender, in violation of Title VII.[18] Claim Six alleges disparate treatment based on Plaintiff's gender, in violation of Title VII.[19] Claim Eight alleges that the USMS engaged in retaliation and retaliatory harassment resulting in the creation of a hostile work environment, in violation of Title VII.[20] Claim Eleven alleges harassment based on perceived disability in violation of the Rehabilitation Act.[21] Finally,

---

[15]Id. at 14 ¶ 113.

[16]Id. at 4 ¶ 20.

[17]Akal has not filed a motion to dismiss.

[18]2nd Am. Compl. at 21-22 ¶¶ 162-76.

[19]Id. at 23 ¶¶ 177-80.

[20]Id. at 24 ¶¶ 188-95.

[21]29 U.S.C. §§ 701-796(*l*); 2nd Am. Compl. at 26 ¶¶ 211-17.

in Claims Twelve and Thirteen, Plaintiff raises Fifth Amendment Due Process and Equal Protection claims.[22]

Claims Four, Five, Six, and Eight are also brought against Akal.

The Attorney General is seeking dismissal of these seven claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### III. LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[23] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] "'[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"[25] "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is

---

[22]Id. at 27-29 ¶¶ 218-31.

[23]Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting* Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

[24]Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

[25]Robbins, 519 F.3d at 1247 (*quoting* Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)) (emphasis in original).

entitled to relief."²⁶ Legal conclusions couched as factual allegations is insufficient evidence to defeat a motion to dismiss.²⁷

**IV. ANALYSIS**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper within this District pursuant to 28 U.S.C. § 1391.

*I.    Claims Four, Five, and Six: Gender Discrimination (Title VII)*

Title VII provides that "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on . . . sex . . . ."²⁸ In Title VII cases, when dealing with indirect evidence of discrimination, the court must apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green.²⁹ "Under this framework, the plaintiff must first establish a prima facie case of prohibited employment action."³⁰ "If the plaintiff does so, the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason for

---

²⁶Robbins at 1247 (*quoting* Twombly, 127 S. Ct. at 1965).

²⁷*See* Twombly at 1949-50.

²⁸42 U.S.C. § 2000e-16(a).

²⁹McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

³⁰Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1220 (10th Cir. 2007) (*citing* Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005)).

its adverse employment action."[31] "If the employer satisfies this burden, 'summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.'"[32]

In Etsitty v. Utah Transit Authority, the United States Court of Appeals for the Tenth Circuit held that "discrimination against a transsexual based on the person's status as a transsexual is not discrimination because of sex under Title VII."[33] Plaintiff's gender discrimination claims are based entirely on her transgender status. Therefore, Plaintiff is unable to sustain a Title VII claim based upon this status.[34]

Plaintiff instead argues that under Price Waterhouse v. Hopkins[35] she may bring Title VII claims on the basis of gender based stereotyping. Specifically, Plaintiff contends that, once she began to present herself as a female, "Defendants believed that Plaintiff looked like a man presenting in a woman's typical feminine appearance rather than what they believed a woman should look like and they believed that others would share their views."[36] Plaintiff further alleges that

---

[31]Etsitty, 502 F.3d at 1220 (*quoting* Plotke, 405 F.3d at 1099) (quotations omitted in original).

[32]Etsitty, 502 F.3d at 1220 (*quoting* Plotke, 405 F.3d at 1099).

[33]Etsitty, 502 F.3d at 1221.

[34]It appears that Plaintiff concedes this issue in her response to the motion to dismiss. *See* Pl.'s Resp. And Mem. Opp'n To Def.'s Mot. To Dismiss Second Am. Compl. (Pl.'s Resp.) (Doc. No. 54; Dec. 18, 2009) at 13.

[35]Price Waterhouse v. Hopkins, 490 U.S. 228, 250-51 (1989); *see* Etsitty, 502 F.3d at 1223.

[36]2nd Am. Compl. at 18-19 ¶ 140.

> Defendants believed that Plaintiff would not be viewed as an authority figure in her position because (a) Plaintiff's appearance as a female would not conform to their social stereotypes regarding how women should look, and (b) Plaintiff's appearance as female would reflect negatively on Defendants and the respect owed to the court system.[37]

In Etsitty a pre-operative male-to-female transsexual was employed as a bus driver for defendant.[38] Although the plaintiff presented herself as a man during her training period and used the men's restrooms, she informed her employer after being hired that she was a transsexual and would soon begin to appear more feminine at work.[39] The plaintiff then began to use the women's restroom while at work.[40] Her supervisors called a meeting with plaintiff in which they explained their concerns about the possibility of liability for defendant if an employee with male genitalia was observed using the female restroom.[41] Subsequently, defendant placed plaintiff on administrative leave and later terminated her employment.[42]

Etsitty sued for unlawful gender discrimination in violation of Title VII.[43] The Tenth Circuit affirmed summary judgment for defendant, holding that "transsexuals are

---

[37] Id. at 19 ¶ 141.

[38] Etsitty, 502 F.3d at 1218.

[39] Id. at 1219.

[40] Id.

[41] Id.

[42] Id.

[43] Id.

8

not a protected class under Title VII," and thus the plaintiff could not satisfy her burden of establishing a prima facie discrimination claim "on the basis of her status as a transsexual."[44]

Etsitty alternatively argued that she was "entitled to protection as a biological male who was discriminated against for failing to conform to social stereotypes about how a man should act and appear."[45] The Tenth Circuit, after discussing <u>Price Waterhouse</u> and other courts' recognition of a Title VII cause of action for discrimination based on an employee's failure to conform to stereotypical gender norms, assumed, without deciding, that such a claim exists, but went on to hold that even if Etsitty had established a <u>McDonnell Douglas</u> prima facie case under the <u>Price Waterhouse</u> theory of gender stereotyping, defendant had a legitimate, nondiscriminatory reason for its employment decision:

> It may be that use of the women's restroom is an inherent part of one's identity as a male-to-female transsexual and that a prohibition on such use discriminates on the basis of one's status as a transsexual. . . . [H]owever, Etsitty may not claim protection under Title VII based upon her transsexuality per se. Rather, Etsitty's claim must rest entirely on the <u>Price Waterhouse</u> theory of protection as a man who fails to conform to sex stereotypes. However far <u>Price Waterhouse</u> reaches, this court cannot conclude it requires employers to allow biological males to use women's restrooms. Use of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes.
> . . . . Because an employer's requirement that employees use restrooms matching their biological sex does not expose

---

[44]<u>Id.</u> at 1222.

[45]<u>Id.</u> at 1223.

9

> biological males to disadvantageous terms and does not discriminate against employees who fail to conform to gender stereotypes, UTA's proffered reason of concern over restroom usage is not discriminatory on the basis of sex.[46]

As a result, the burden shifted back to Etsitty to demonstrate that the proffered reason was pretextual, but the plaintiff could not do so.[47]

The central contention in Plaintiff's Second Amended Complaint is that the USMS requested that Akal investigate Plaintiff's restroom usage and ultimately both defendants restricted her use of restrooms within the Arraj Courthouse to those compatible with her anatomical gender pending proof of her gender reassignment surgery.[48] This Court will assume without deciding that a Price Waterhouse gender stereotyping claim is available. Etsitty precludes such a claim based solely upon restrictions on Plaintiff's usage of certain bathrooms. Instead, under Price Waterhouse, Plaintiff is required to show pretext.[49] To the extent that Plaintiff was required to plead

---

[46]Id. at 1224-25.

[47]Id. at 1227.

[48]2nd Am. Compl. at 10-12 ¶¶ 78-86, 88-94, 96-98.

[49]"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's preferred explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quotation omitted). Such a showing may be made by revealing "such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions, in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could . . . infer that the employer did not act for the asserted non-discriminatory reasons." Jencks v. Modern Woodmen of Am., 479 F.3d 1261, 1267 (10th Cir. 2007) (quotation omitted).

pretext to survive a motion to dismiss,[50] this Court is satisfied that this has been accomplished.

Regardless, Plaintiff has additionally alleged discrimination based on excessive medical evaluations, unwarranted disciplinary actions, and unpaid suspensions. As above, the Court will assume that gender stereotyping claims exist and, thus, Plaintiff has met her McDonnell Douglas prima facie burden. However, unlike bathroom usage, these allegations have not been addressed by the Attorney General and it cannot be established at this point in the case that there are legitimate, nondiscriminatory reasons for these actions.

Accordingly, to the extent Claims Four, Five, and Six relate to gender stereotyping claims, the Court declines to dismiss them.

*II. Claim 8: Retaliation (Title VII)*

Claim Eight alleges retaliation under Title VII. The Attorney General argues that Plaintiff has not adequately pled that she either engaged in Title VII protected activity or that there is a causal connection between Plaintiff's alleged protected activity and any claimed adverse retaliatory action.

Plaintiff, in her McDonnell Douglas prima facie case, must demonstrate that (i) she engaged in an activity protected under Title VII; (ii) she suffered an adverse employment action; and (iii) there is some indication of a causal connection between the

---

[50] *See, e.g.*, Waters v. Durango Fire and Rescue Auth., 2009 WL 4906684 at *4 (D.Colo. Dec. 16, 2009).

11

protected activity and the adverse action.[51] For purposes of the below discussion, it is assumed that Plaintiff has established the first two elements of her prima facie case.[52]

Merely complaining about an employer's conduct, without complaining that the conduct was discriminatory, is insufficient to establish a "causal connection" between a plaintiff's alleged protected activity and a claimed adverse action.[53]

Plaintiff claims she engaged in Title VII protected activity when she provided a written statement to Akal and the USMS.[54] The contents of the written statement are as follows:

> Before I started my transition at work about a month ago I did everything I could do to help prepare people for what was about to take place. One key element that was left out was the education. It has been my experience that while some will not and cannot except [sic] what I am doing however education can cause an understanding. I also feel it is easier to hate what you do not understand.
> It has been a month since I first came to work and I can still feel some tension from some. The restroom use has certainly become a huge item of discussion. I feel that I have done everything humanely [sic] possible to accommodate all parties. I am using restrooms on the third floor for the most part however on occasion I use the one in the jury assembly room, which is certainly of the path of travel.

---

[51]Pinkerton v. Colo. Dept. Of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009); Medina v. Income Support Div., N.M., 413 F.3d 1131, 1135-36 (10th Cir. 2005) (*citing* Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993)).

[52]*See* Zokari v. Gates, 561 F.3d 1076, 1081 (10th Cir. 2009).

[53]Id. at 1081-82; Petersen v. Utah Dept. Of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002) ("An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition.").

[54]2nd Am. Compl. at 11 ¶ 87.

12

> To help alleviate some of the problems I will once again make
> the offer to do some public question and answer session [sic].
> I have done these at University's [sic] and College's [sic] and
> to other groups in Colorado.
> I am hopefully [sic] that all things will soon smooth out. Thank
> you for your consideration.[55]

This statement establishes only that Plaintiff informed her supervisors that she was experiencing a tense work environment. However, a tense work environment is not in and of itself a Title VII violation. Importantly, nowhere in the statement does she allege discriminatory conduct explicitly prohibited under Title VII.

The present case is analogous to Zokari v. Gates.[56] Zokari, an African-American man born in Nigeria and a federal employee, was asked to take an English class because of a supervisor's concern about his accent.[57] Zokari refused to take the class and told his supervisor that the failure of others to understand his accent resulted from their lack of exposure to people with accents, and that these people would eventually get used to it.[58] The plaintiff later claimed he was discriminated against based on his

---

[55]Def. Att'y General's Mot. To Dismiss Pl.'s Second Am. Compl. (Doc. No. 51; Nov. 25, 2009) at Ex. 1. Consideration of this document, not included in Plaintiff's Second Amended Complaint, does not require conversion of the motion to dismiss into a motion for summary judgment. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") (citations omitted). Plaintiff referred to this document at ¶ 87 of the Complaint and did not dispute the authenticity of the document in her reply.

[56]Zokari, 561 F.3d 1076.

[57]Id. at 1079.

[58]Id.

race and national origin and alleged retaliation for his refusal to take these classes.[59] The court held that the plaintiff never told his supervisor of his belief that the request to take language classes constituted improper discrimination and, therefore, his explanation would not have informed his supervisors that he was opposing a violation of Title VII.[60]

Similar to Zokari, Plaintiff here never informed her supervisors either that she was the subject to improper discrimination or that she was opposing a violation of Title VII. Rather, the letter simply notes "some tension from some" and reflects her offer to "do some public question and answer session[s]." The letter does not establish any "causal connection" between Plaintiff's alleged "protected activity" and any adverse employment action, as no employer reasonably could be held to have been placed on notice of a complaint of discrimination.[61] As Plaintiff, at a minimum, cannot establish one element of her McDonnell Douglas prima facie case, the retaliation claim must be dismissed.

### III. Claim 11: Rehabilitation Act

Claim Eleven alleges harassment based on perceived disability under the Rehabilitation Act. Although not explicitly stated in the claim, the perceived disability is

---

[59]Id. at 1082.

[60]Id.

[61]*See also* Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253 (10th Cir. 1999) (informal nature of complaint irrelevant; however, complaint must directly reference the alleged discrimination).

14

taken to be gender dysphoria, as this is the only disability Plaintiff mentions in her Complaint.[62] The Attorney General argues that Plaintiff cannot show that she is an individual with a disability under the Rehabilitation Act.[63]

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability."[64] "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [provisions of] the Americans with Disabilities Act."[65] However, the Rehabilitation Act expressly excludes "transvestism, transsexualism . . . [and] gender identity disorders not resulting from physical impairments" from the definition of disability.[66]

Gender dysphoria, as a gender identity disorder, is specifically exempted as a disability by the Rehabilitation Act. Therefore, Plaintiff has failed to state a claim under the Rehabilitation Act and Claim Eleven must be dismissed.

---

[62] 2nd Am. Compl. at 6 ¶ 39.

[63] 29 U.S.C. §§ 705(20)(A)(i)-(ii).

[64] 29 U.S.C. § 794(a).

[65] 29 U.S.C. § 794(d).

[66] 29 U.S.C. § 705(20)(B); 29 U.S.C. § 705(20)(F)(i).

## IV. Claims 12 & 13: Constitutional Claims

Claim Twelve alleges violation of Plaintiff's Fifth Amendment Due Process rights and Claim Thirteen alleges violation of Plaintiff's Fifth Amendment Equal Protection rights. Both claims are premised on discriminatory activity associated with Plaintiff's employment at the Arraj Courthouse. The Attorney General argues that both of these claims are preempted by Title VII.

"Title VII preempts any constitutional cause of action that a court might find under the First or Fifth Amendments for discrimination in federal employment."[67]

Plaintiff argues that although Title VII preempts constitutional claims, it does so only to the extent that the conduct falls "within the scope of coverage of Title VII."[68] However, Plaintiff's claims are clearly based on her position as a federal employee. The clear rule is that Title VII is the *only* source of relief for discrimination in federal employment, no matter how the claims are presented.[69] Accordingly, Plaintiff's Fifth Amendment claims must be dismissed as preempted by Title VII.

---

[67] Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997) (citations omitted).

[68] Pl.'s Resp. And Mem. Opp'n To Def.'s Mot. To Dismiss Second Am. Compl. (Doc. No. 54; Dec. 18, 2009) at 22.

[69] Belhomme, 127 F.3d at 1217 (*citing* Brown v. General Servs. Admin., 425 U.S. 820, 828-29 (1976)) ("[T]he Supreme Court has clearly stated that a federal employee's only avenue for judicial relief from federal employment discrimination is through Title VII.").

*V.  Akal Claims*

Although Akal has not filed a motion to dismiss, the Court finds that the reasoning behind dismissing Claims Six and Eight for the Attorney General applies equally to Plaintiff's claims against Akal.  Therefore, the Court will dismiss Claims Six and Eight in their entirety.[70]


**V.  ORDER**

It is ORDERED that Defendant Attorney General's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. No. 51; Nov. 25, 2009) is granted in part and denied in part.  It is

FURTHER ORDERED that Claims Eight, Eleven, Twelve, and Thirteen are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  It is

FURTHER ORDERED that the case shall proceed on Claims One through Seven, Nine, and Ten.

DATED at Denver, Colorado, this 24th day of June, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

---

[70] *See* <u>McKinney v. State of Okla. Dept. Of Human Servs.</u>, 925 F.2d 363, 365 (10th Cir. 1991) (*sua sponte* dismissal under Fed. R. Civ. P. 12(b)(6) appropriate if amendment of complaint would be futile).